FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jun 30, 2021

SEAN F. McAVOY, CLERK

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| CARLA W.,[1] <br>               Plaintiff, <br><br>   vs. <br><br> ANDREW M. SAUL, <br> COMMISSIONER OF SOCIAL <br> SECURITY, <br>             Defendant. | No. 4:20-cv-05098-MKD <br><br> ORDER DENYING PLAINTIFF'S <br> MOTION FOR SUMMARY <br> JUDGMENT AND GRANTING <br> DEFENDANT'S MOTION FOR <br> SUMMARY JUDGMENT <br><br> ECF Nos. 19, 23 |

Before the Court are the parties' cross-motions for summary judgment. ECF Nos. 19, 23. The parties consented to proceed before a magistrate judge. ECF No. 5. The Court, having reviewed the administrative record and the parties' briefing,

---

[1] To protect the privacy of plaintiffs in social security cases, the undersigned identifies them by only their first names and the initial of their last names. *See* LCivR 5.2(c).

ORDER - 1

is fully informed.  For the reasons discussed below, the Court denies Plaintiff's

motion, ECF No. 19, and grants Defendant's motion, ECF No. 23.

## JURISDICTION

The Court has jurisdiction over this case pursuant to 42 U.S.C. § 405(g).

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social

Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is

limited; the Commissioner's decision will be disturbed "only if it is not supported

by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153,

1158 (9th Cir. 2012).  "Substantial evidence" means "relevant evidence that a

reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159

(quotation and citation omitted).  Stated differently, substantial evidence equates to

"more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and

citation omitted).  In determining whether the standard has been satisfied, a

reviewing court must consider the entire record as a whole rather than searching

for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its

judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152,

1156 (9th Cir. 2001).  If the evidence in the record "is susceptible to more than one

rational interpretation, [the court] must uphold the ALJ's findings if they are

ORDER - 2

supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id.* An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. §

404.1520(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. § 404.1520(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 404.1520(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. § 404.1520(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. § 404.1520(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. *Id.*

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(iii). If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. § 404.1520(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess

the claimant's "residual functional capacity." Residual functional capacity (RFC),

defined generally as the claimant's ability to perform physical and mental work

activities on a sustained basis despite his or her limitations, 20 C.F.R. §

404.1545(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's

RFC, the claimant is capable of performing work that he or she has performed in

the past (past relevant work). 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant is

capable of performing past relevant work, the Commissioner must find that the

claimant is not disabled. 20 C.F.R. § 404.1520(f). If the claimant is incapable of

performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's

RFC, the claimant is capable of performing other work in the national economy.

20 C.F.R. § 404.1520(a)(4)(v). In making this determination, the Commissioner

must also consider vocational factors such as the claimant's age, education, and

past work experience. *Id.* If the claimant is capable of adjusting to other work, the

Commissioner must find that the claimant is not disabled. 20 C.F.R. §

404.1520(g)(1). If the claimant is not capable of adjusting to other work, analysis

concludes with a finding that the claimant is disabled and is therefore entitled to

benefits. *Id.*

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that 1) the claimant is capable of performing other work; and 2) such work "exists in significant numbers in the national economy." 20 C.F.R. § 404.1560(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

On November 16, 2016, Plaintiff applied for Title II disability insurance benefits alleging a disability onset date of November 1, 2008. Tr. 15, 83, 173-74. The application was denied initially and on reconsideration. Tr. 105-11, 113-19. Plaintiff appeared before an administrative law judge (ALJ) on May 28, 2019. Tr. 40-82. On June 25, 2019, the ALJ denied Plaintiff's claim. Tr. 12-29.

At step one of the sequential evaluation process, the ALJ found Plaintiff, who met the insured status requirements through December 31, 2013, has not engaged in substantial gainful activity since November 1, 2008. Tr. 17. At step two, the ALJ found that there were no medical signs or laboratory findings to substantiate that Plaintiff had any severe medically determinable impairments through the date last insured. *Id.* The ALJ made an alternative step two finding, and found that based on Plaintiff's subjective complaints, she had the following

severe impairments through the date last insured: left ankle fracture and obesity.
Tr. 17-18.

At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment through the date last insured. Tr. 19. The ALJ then concluded that through the date last insured, Plaintiff had the RFC to perform light work with the following limitations:

> [Plaintiff] could never climb ladders or scaffolds, crouch, or crawl.
> [Plaintiff] could occasionally climb ramps and stairs, stoop, and kneel.
> [Plaintiff] should avoid all exposure to unprotected heights and occasional exposure to extreme cold.

Tr. 20.

At step four, the ALJ found Plaintiff was unable to perform any of past relevant work through the date last insured. Tr. 23. At step five, the ALJ found that, considering Plaintiff's age, education, work experience, RFC, and testimony from the vocational expert, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, such as agricultural produce sorter, warehouse checker, and housekeeper. Tr. 24. Therefore, the ALJ concluded Plaintiff was not under a disability, as defined in the Social Security Act, from the alleged onset date of November 1, 2008, through the date last insured. *Id.*

On April 21, 2020, the Appeals Council denied review of the ALJ's decision, Tr. 1-6, making the ALJ's decision the Commissioner's final decision for purposes of judicial review. *See* 42 U.S.C. § 1383(c)(3).

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying her disability insurance benefits under Title II of the Social Security Act. Plaintiff raises the following issues for review:

1. Whether the ALJ properly evaluated the medical opinion evidence;

2. Whether the ALJ conducted a proper step-two analysis;

3. Whether the ALJ properly evaluated lay witness evidence;

4. Whether the ALJ properly evaluated Plaintiff's symptom claims; and

5. Whether the ALJ conducted a proper step-five analysis.

ECF No. 19 at 6.

## DISCUSSION

**A. Medical Opinion Evidence**

Plaintiff contends the ALJ erred in his consideration of the opinions of Meneleo Lilagan, M.D., and Kelli Campbell, ARNP. ECF No. 19 at 8-13. There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant [but who

review the claimant's file] (nonexamining [or reviewing] physicians)." *Holohan v. Massanari,* 246 F.3d 1195, 1201-02 (9th Cir. 2001) (citations omitted). Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's. *Id.* at 1202. "In addition, the regulations give more weight to opinions that are explained than to those that are not, and to the opinions of specialists concerning matters relating to their specialty over that of nonspecialists." *Id.* (citations omitted).

If a treating or examining physician's opinion is uncontradicted, the ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005). "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (internal quotation marks and brackets omitted). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995)). The opinion of a nonexamining physician may

serve as substantial evidence if it is supported by other independent evidence in the record. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).

"Only physicians and certain other qualified specialists are considered '[a]cceptable medical sources.'" *Ghanim v. Colvin*, 763 F.3d 1154, 1161 (9th Cir. 2014) (alteration in original); *see* 20 C.F.R. § 404.1513 (2013).[2]  However, an ALJ is required to consider evidence from non-acceptable medical sources, such as therapists.  20 C.F.R. § 404.1513(d) (2013).[3]  An ALJ may reject the opinion of a non-acceptable medical source by giving reasons germane to the opinion.  *Ghanim*, 763 F.3d at 1161.

*1. Dr. Lilagan*

On December 13, 2016, Dr. Lilagan, a treating physician, performed an examination and rendered an opinion on Plaintiff's functioning.  Tr. 676-78.  Dr. Lilagan diagnosed Plaintiff with low back pain, and opined Plaintiff's back pain

_____

[2] The regulation that defines acceptable medical sources is found at 20 C.F.R. § 404.1502 for claims filed after March 27, 2017.  The Court applies the regulation in effect at the time the claim was filed.

[3] The regulation that requires an ALJ's consider opinions from non-acceptable medical sources is found at 20 C.F.R. § 404.1502c for claims filed after March 27, 2017.  The Court applies the regulation in effect at the time the claim was filed.

causes moderate limitations in Plaintiff's ability to stand, walk, lift, carry, handle, push, pull, reach, stoop, and crouch. Tr. 677. He further opined Plaintiff was limited to sedentary work, and opined the limitations were expected to last six months with treatment. Tr. 678. The ALJ gave Dr. Lilagan's opinion little weight. Tr. 22. As Dr. Lilagan's opinion is contradicted by the opinion of Dr. Jahnke, Tr. 49, the ALJ was required to give specific and legitimate reasons, supported by substantial evidence, to reject Dr. Lilagan's opinion. *See Bayliss*, 427 F.3d at 1216.

First, the ALJ found Dr. Lilagan rendered the opinion outside of the relevant time period. Tr. 22. Evidence from outside the relevant period in a case is of limited relevance. *Carmickle v. Comm'r of Soc. Sec.*, 533 F.3d 1155, 1165 (9th Cir. 2008); *see also Fair v. Bowen*, 885 F.2d 597 (9th Cir. 1989) (report that predated period at issue was relevant only to proving Plaintiff's condition had worsened); *Johnson v. Astrue*, 303 F. App'x 543, 545 (9th Cir. 2008) (affirming ALJ's rejection of medical opinions that were remote in time, and reliance on more recent opinions); *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1223-24 (9th Cir. 2010) (date of social worker's opinion rendered more than a year after the date last insured was a germane reason to not address the opinion). Dr. Lilagan rendered his opinion in December 2016, which is eight years after Plaintiff's alleged onset date, and three years after Plaintiff's date last insured. Tr. 17, 676-78.

Plaintiff argues Dr. Lilagan's opinion related to the time period prior to Plaintiff's date last insured, because Dr. Lilagan stated Plaintiff's limitations originated in 2010. ECF No. 19 at 10. The questionnaire completed by Dr. Lilagan asks what Plaintiff's limitations were at the time the questionnaire was completed in 2016, and Dr. Lilagan opined Plaintiff's limitations were only expected to last six months. Tr. 678. Further, Dr. Lilagan wrote that Plaintiff's "reported" onset date is 2010, and that Plaintiff reported her back pain had worsened through the years. Tr. 676. As Dr. Lilagan rendered an opinion that Plaintiff had limitations for a six-month period in 2016, and he stated Plaintiff reported an onset date of 2010 but did not give an opinion as to when he believed the limitations began, there is no evidence that Dr. Lilagan's opinion applies to the time period prior to Plaintiff's 2013 date last insured. The ALJ reasonably rejected Dr. Lilagan's opinion because it was rendered three years after the date last insured. This was a specific and legitimate reason, supported by substantial evidence, to reject the opinion.

Second, the ALJ found Dr. Lilagan's opinion was inconsistent with the medical evidence. Tr. 22. A medical opinion may be rejected if it is unsupported by medical findings. *Bray*, 554 F.3d at 1228; *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004); *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001);

ORDER - 12

*Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992). An ALJ may discredit physicians' opinions that are unsupported by the record as a whole. *Batson*, 359 F.3d at 1195. Moreover, an ALJ is not obliged to credit medical opinions that are unsupported by the medical source's own data and/or contradicted by the opinions of other examining medical sources. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008).

The ALJ noted Dr. Lilagan's opinion was inconsistent with Plaintiff's medical records and imaging during the relevant time period. Tr. 22. Imaging in 2011 of Plaintiff's left tibia and fibula were normal, and the limited view of her left ankle from the imaging was unremarkable. *Id.* (citing Tr. 530). Imaging taken in 2013 of her left ankle demonstrated severe soft tissue swelling laterally with probable avulsive fractures, anterior calcaneal enthesophytes, and mild metatarsal phalangeal joint osteoarthritic change. Tr. 22 (citing Tr. 406). Later imaging in 2013 of the left ankle showed lateral soft tissue imaging but no evidence of acute fracture. Tr. 22 (citing Tr. 398). Imaging of Plaintiff's knee in 2011 was normal. Tr. 281. Plaintiff also had normal range of motion at physical examinations during the relevant period, and had no tenderness or swelling at some examinations. Tr.

22, 275, 309, 530.  Plaintiff's gait was generally normal, both before and after the date last insured.  Tr. 279, 341, 344, 368, 383.

Plaintiff argues the objective medical evidence is consistent with Dr. Lilagan's opinion because Dr. Lilagan opined Plaintiff's limitations were due to her back impairment and not her left ankle impairment.  ECF No. 19 at 10-11. However, the ALJ found Plaintiff's back impairment was not a severe medically determinable impairment.  Tr. 18.  Plaintiff had a normal gait, and her back examinations were generally normal, with no tenderness or deformity, and normal range of motion.  *Id.* (citing Tr. 276, 405).  At Dr. Lilagan's 2016 examination, Plaintiff complained of lower back pain, and she had tenderness, positive straight leg raise testing, and pain with range of motion.  Tr. 680.  However, at many medical visits during the relevant time period, Plaintiff did not report back pain and she had normal findings on examination including no tenderness, and normal range of motion.  Tr. 266, 276, 317-18, 322, 324.  Even in the time period after the date last insured, Plaintiff often had normal findings, including normal range of motion and negative straight leg raise testing.  Tr. 285, 353-54, 706.  Lumbar spine imaging in 2017 demonstrated Plaintiff had moderate degenerative changes, mild

osteopenia, minimal anterior listhesis of L4 and L5, and partial lumbarization of S1. Tr. 645, 709.

While Plaintiff intermittently complained of back pain during the relevant time period, there is not objective evidence to support Plaintiff's argument that Dr. Lilagan's opinion that Plaintiff is limited to sedentary work applied to the relevant period. There is no imaging of Plaintiff's back prior to the date last insured. There are diagnoses of back impairments, including sacroiliitis, Tr. 311, and a back strain, Tr. 321, but Dr. Lilagan typically listed Plaintiff's diagnosis as "low back pain," Tr. 289, 291, 299, 677. Plaintiff had tenderness on examination during the relevant period, though at several visits she reported moving a lot of items including heavy furniture in the days prior to the appointments, and even when experiencing pain and tenderness, Plaintiff continued to have normal range of motion. Tr. 304-05, 309, 315, 319-21. Plaintiff was referred to physical therapy for her back pain in May 2011. Tr. 313. Plaintiff was advised to use a heating pad, try massage, engage in regular exercise, maintain good posture, and take her medication to treat her back. Tr. 305. There is no evidence Plaintiff was referred to a specialist or advised to pursue more significant treatment for her back pain. The ALJ reasonably found Dr. Lilagan's opinion was inconsistent with the

objective medical evidence.  This was a specific and legitimate reason, supported by substantial evidence, to reject Dr. Lilagan's opinion.

### 2. *Ms. Campbell*

On August 18, 2019, Ms. Campbell, a treating nurse practitioner, rendered an opinion on Plaintiff's functioning.  Tr. 684-86.  Ms. Campbell listed Plaintiff's diagnoses as chronic low back pain, sciatica, anxiety, posttraumatic stress disorder, depression, and joint pain.  Tr. 684.  Ms. Campbell opined Plaintiff needs to lie down and/or elevate her legs for one to two hours per day due to back pain; Plaintiff would miss four or more days per month if she tried to work full-time; Plaintiff is severely limited and unable to perform even sedentary work as she would need to change positions frequently, and would be able to infrequently lift less than five pounds; she can frequently use her upper extremities; and she would be off-task more than thirty percent of the time if she worked full-time.  Tr. 684-86.  The ALJ gave Ms. Campbell's opinion little weight.  Tr. 22.  As Ms. Campbell is not an acceptable medical source, the ALJ was required to give germane reasons to reject the opinion.  *See Ghanim*, 763 F.3d at 1161.

First, the ALJ found Ms. Campbell rendered her opinion after the date last insured.  Tr. 22.  Evidence from outside the relevant period in a case is of limited relevance.  *Carmickle,* 533 F.3d at 1165; *see also Fair*, 885 F.2d at 597.  Ms. Campbell rendered her opinion in April 2019, which is more than five years after

Plaintiff's date last insured. Tr. 22, 684-86. Plaintiff argues there is evidence of her back impairment during the relevant period. ECF No. 19 at 13. However, Ms. Campbell did not treat Plaintiff until 2017 and did not render her opinion until 2019; the questionnaire Ms. Campbell completed asks only about Plaintiff's present functioning at the time Ms. Campbell completed the questionnaire in 2019. Tr. 684-86. Ms. Campbell wrote Plaintiff's symptoms had worsened over the course of 10 to 12 years, but Plaintiff could not recall the specific date when the symptoms began; Ms. Campbell did not give an opinion on when she believed Plaintiff's limitations began. Tr. 686. The ALJ reasonably rejected Ms. Campbell's opinion because it was rendered over five years after the date last insured. This was a germane reason to reject Ms. Campbell's opinion.

Second, the ALJ found Ms. Campbell's opinion was inconsistent with the objective medical evidence from the relevant time period. Tr. 22. A medical opinion may be rejected if it is unsupported by medical findings. *Bray*, 554 F.3d at 1228; *Batson*, 359 F.3d at 1195; *Thomas*, 278 F.3d at 957; *Tonapetyan*, 242 F.3d at 1149; *Matney*, 981 F.2d at 1019. The ALJ noted Ms. Campbell's opinion was inconsistent with the objective evidence for the same reasons Dr. Lilagan's opinion was inconsistent with the evidence. Tr. 22. As discussed *supra,* the evidence from the relevant period demonstrates Plaintiff did not have imaging taken of her back prior to her date last insured, and she had generally normal physical examination

findings, with intermittent reports of pain and tenderness in her back, neck and ankle. Tr. 276, 304-05, 309, 315, 319-21, 405. While Plaintiff offers an alternative interpretation of the evidence, ECF No. 19 at 13, the ALJ reasonably found Ms. Campbell's opinion was inconsistent with the objective evidence. This was a germane reason to reject the opinion. Plaintiff is not entitled to remand on these grounds.

**B. Step Two**

Plaintiff contends the ALJ erred at step two by failing to identify several of her conditions, including her mental health impairments, back impairments, and history of left knee surgeries, as severe impairments. ECF No. 19 at 13-15. At step two of the sequential process, the ALJ must determine whether claimant suffers from a "severe" impairment, i.e., one that significantly limits her physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520(c).

To establish a severe impairment, the claimant must first demonstrate that the impairment results from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical or laboratory diagnostic techniques. 20 C.F.R. § 404.1521. In other words, the claimant must establish the existence of the physical or mental impairment through objective medical evidence (*i.e.*, signs, laboratory findings, or both) from an acceptable

medical source; the medical impairment cannot be established by the claimant's statement of symptoms, a diagnosis, or a medical opinion. *Id.*

An impairment may be found to be not severe when "medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work…." Social Security Ruling (SSR) 85-28 at *3. Similarly, an impairment is not severe if it does not significantly limit a claimant's physical or mental ability to do basic work activities; which include walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; seeing, hearing, and speaking; understanding, carrying out and remembering simple instructions; use of judgment, responding appropriately to supervision, coworkers and usual work situations; and dealing with changes in a routine work setting. 20 C.F.R. § 404.1520(a); SSR 85-28.[4]

Step two is "a de minimus screening device [used] to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996). "Thus, applying our normal standard of review to the requirements of step two, [the Court] must

---

[4] The Supreme Court upheld the validity of the Commissioner's severity regulation, as clarified in SSR 85-28, in *Bowen v. Yuckert*, 482 U.S. 137, 153-54 (1987).

ORDER - 19

determine whether the ALJ had substantial evidence to find that the medical evidence clearly established that [Plaintiff] did not have a medically severe impairment or combination of impairments." *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005).

Plaintiff argues the ALJ erred in finding the following diagnoses non-severe: left knee surgeries, anxiety/panic disorder, sacroiliitis, lumbar strain with low back pain and aggravation of pain with motion/activity, and diffuse tenderness to palpation of the lumbar, thoracic, and cervical spines. ECF No. 19 at 14. Plaintiff contends the impairments significantly limit her ability to perform basic work activities, and the ALJ erred in failing to account for the impairments in the RFC. *Id.* at 14-15, ECF No. 24 at 6-7. However, Plaintiff does set forth any arguments against the ALJ's findings, including his assessment of the four broad areas of mental functioning in determining the impairments are non-severe. Further, Plaintiff does not point to any specific limitations caused by the impairments that the ALJ failed to account for in the RFC. As such, Plaintiff has not met her burden in demonstrating her impairments are severe nor that the ALJ harmfully erred in finding the impairments non-severe.

**C. Lay Opinion Evidence**

Plaintiff contends the ALJ erred in his consideration of the lay witness statement of Ashley W. ECF No. 19 at 15-17. An ALJ must consider the

ORDER - 20

statement of lay witnesses in determining whether a claimant is disabled. *Stout*, 454 F.3d at 1053. Lay witness evidence cannot establish the existence of medically determinable impairments, but lay witness evidence is "competent evidence" as to "how an impairment affects [a claimant's] ability to work." *Id.*; 20 C.F.R. § 404.1513; *see also Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993) ("[F]riends and family members in a position to observe a claimant's symptoms and daily activities are competent to testify as to her condition."). If a lay witness statement is rejected, the ALJ "'must give reasons that are germane to each witness.'" *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996) (citing *Dodrill*, 12 F.3d at 919).

On December 7, 2016, Plaintiff's daughter, Ashley W., completed a third-party function report regarding Plaintiff's functioning. Tr. 215-22. Ms. W. stated Plaintiff cannot lift heavy objects, stand in one place for very long, walk very far, nor sit for long periods. Tr. 215. She reported Plaintiff cares for a dog, with assistance; Plaintiff has no issues with her personal care; Plaintiff does not need reminders to handle her own needs/grooming nor to take medication; she prepares her own meals daily; she reads, folds laundry, waters plants, and dusts daily; she rides in a car when she goes out because she cannot drive or walk and there is no public transportation; Plaintiff is able to handle her own money; she has difficulty with lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, stair

climbing, completing tasks, and using hands; she can walk 20 to 25 feet before

needing to rest for one to two minutes; Plaintiff finishes what she starts and has no

issues following instructions nor getting along with authority figures; and she does

not handle stress well.  Tr. 216-22.  The ALJ gave Ms. W.'s statement little weight.

Tr. 22.

The ALJ found Ms. W.'s statement is inconsistent with the objective

evidence.  *Id.*  Inconsistency with the medical evidence is a germane reason for

rejecting lay witness testimony.  *See Bayliss*, 427 F.3d at 1218; *Lewis v. Apfel*, 236

F.3d 503, 511-12 (9th Cir. 2001) (germane reasons include inconsistency with

medical evidence, activities, and reports).  Ms. W. completed the questionnaire in

December 2016, which is three years after Plaintiff's date last insured.  The

questionnaire asks about Plaintiff's functioning at the time the questionnaire was

completed, and Ms. W.'s answers are written in the present tense, indicating she

answered regarding Plaintiff's functioning in 2016.  Tr. 215-22.  Ms. W. did not

submit a statement regarding Plaintiff's functioning during the relevant period.

Like Dr. Lilagan and Ms. Campbell's opinions, Ms. W,'s statement about

Plaintiff's functioning in 2016 is not representative of Plaintiff's functioning prior

to December 2013.  The ALJ reasonably found Ms. W.'s statement is inconsistent

with the objective evidence during the relevant adjudicative period for the same

reasons the ALJ reasonably found the objective evidence was inconsistent with Dr.

Lilagan and Ms. Campbell's opinions, as discussed *supra.*

Further, Ms. W.'s statement largely restates Plaintiff's own claims. *See* Tr.

207-22. Where the ALJ gives clear and convincing reasons to reject a claimant's

testimony, and where a lay witness's testimony is similar to the claimant's

subjective complaints, the reasons given to reject the claimant's testimony are also

germane reasons to reject the lay witness testimony. *Valentine v. Comm'r Soc.*

*Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009); *see also Molina*, 674 F.3d at 1114

("[I]f the ALJ gives germane reasons for rejecting testimony by one witness, the

ALJ need only point to those reasons when rejecting similar testimony by a

different witness"). As discussed *infra,* the ALJ gave clear and convincing reasons

to reject Plaintiff's symptom claims. Thus, any error in rejecting Ms. W.'s

statement is harmless. Plaintiff is not entitled to remand on these grounds.

**D. Plaintiff's Symptom Claims**

Plaintiff faults the ALJ for failing to rely on reasons that were clear and

convincing in discrediting her symptom claims. ECF No. 19 at 17-20. An ALJ

engages in a two-step analysis to determine whether to discount a claimant's

testimony regarding subjective symptoms. SSR 16–3p, 2016 WL 1119029, at *2.

"First, the ALJ must determine whether there is objective medical evidence of an

underlying impairment which could reasonably be expected to produce the pain or

other symptoms alleged." *Molina*, 674 F.3d at 1112 (quotation marks omitted).

"The claimant is not required to show that [the claimant's] impairment could

reasonably be expected to cause the severity of the symptom [the claimant] has

alleged; [the claimant] need only show that it could reasonably have caused some

degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).

Second, "[i]f the claimant meets the first test and there is no evidence of

malingering, the ALJ can only reject the claimant's testimony about the severity of

the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the

rejection." *Ghanim*, 763 F.3d at 1163 (citations omitted). General findings are

insufficient; rather, the ALJ must identify what symptom claims are being

discounted and what evidence undermines these claims. *Id*. (quoting *Lester*, 81

F.3d at 834; *Thomas*, 278 F.3d at 958 (requiring the ALJ to sufficiently explain

why it discounted claimant's symptom claims)). "The clear and convincing

[evidence] standard is the most demanding required in Social Security cases."

*Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r

of Soc. Sec. Admin*., 278 F.3d 920, 924 (9th Cir. 2002)).

Factors to be considered in evaluating the intensity, persistence, and limiting

effects of a claimant's symptoms include: 1) daily activities; 2) the location,

duration, frequency, and intensity of pain or other symptoms; 3) factors that

precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and

ORDER - 24

side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; 5) treatment, other than medication, an individual receives or has received for relief of pain or other symptoms; 6) any measures other than treatment an individual uses or has used to relieve pain or other symptoms; and 7) any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms. SSR 16-3p, 2016 WL 1119029, at *7; 20 C.F.R. § 404.1529(c). The ALJ is instructed to "consider all of the evidence in an individual's record," to "determine how symptoms limit ability to perform work-related activities." SSR 16-3p, 2016 WL 1119029, at *2.

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, but that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the evidence. Tr. 20.

### 1. Inconsistent Objective Medical Evidence

The ALJ found Plaintiff's symptom claims were inconsistent with the objective medical evidence. Tr. 21-22. An ALJ may not discredit a claimant's symptom testimony and deny benefits solely because the degree of the symptoms alleged is not supported by objective medical evidence. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991); *Fair*, 885 F.2d at 601; *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir.

2005).  However, the objective medical evidence is a relevant factor, along with the medical source's information about the claimant's pain or other symptoms, in determining the severity of a claimant's symptoms and their disabling effects. *Rollins*, 261 F.3d at 857; 20 C.F.R. § 404.1529(c)(2).

First, the ALJ noted Plaintiff's reported physical limitations, such as the inability to stand more than ten minutes, were inconsistent with the objective evidence.  Tr. 21.  Plaintiff's ankle examinations during the relevant period generally demonstrated normal range of motion, no tenderness, no swelling, and she generally had a normal gait.  Tr. 21 (citing Tr. 275-76, 307-09).  Imaging of Plaintiff's left tibia and fibula were normal.  Tr. 21 (citing Tr. 530).  Plaintiff injured her ankle in 2013; imaging demonstrated some abnormalities but no acute fracture, and Plaintiff had tenderness and swelling in her ankle, but had normal range of motion and sensation.  Tr. 21 (citing Tr. 333, 398, 402, 406).  Despite her complaints of limitations due to her history of knee surgeries, Plaintiff's knee imaging was normal, and she generally had normal range of motion and no tenderness or swelling in her knee.  Tr. 18 (citing Tr. 275, 281).  While Plaintiff alleged limitations due to a back impairment, Plaintiff's back examinations were generally normal, and there is no imaging of Plaintiff's back during the relevant period.  Tr. 18 (citing Tr. 405).

Second, the ALJ found Plaintiff's reported limitations due to mental health symptoms were inconsistent with the objective evidence. Tr. 18-19. While Plaintiff alleges disability in part due to mental health symptoms, the ALJ noted Plaintiff had normal psychiatric examinations during the relevant period. Tr. 19 (citing Tr. 167, 305, 308, 397, 402, 405). Plaintiff and Ms. W. reported Plaintiff did not have difficulties with personal care, she does not need reminders to do things, she has no issues handling money, and she does not have issues with memory, completing tasks, concentration, understanding, following instructions, nor getting along with others. Tr. 208-20.

Plaintiff argues the objective evidence is consistent with her symptom claims. ECF No. 19 at 18-19. While Plaintiff argues the objective evidence is consistent with her alleged limitations, Plaintiff largely cites to her self-report rather than objective evidence. For example, Plaintiff argues the evidence is consistent with her reported limitations due to a history of knee surgeries, but Plaintiff points to minimal evidence of limitations caused by her left knee impairment. *Id.* at 18. Plaintiff had knee pain, swelling, and tenderness in August 2011, *id.* at 3 (citing Tr. 279), but Plaintiff otherwise points to her self-report of knee surgeries, knee popping, knee pain, and a need for medication due to her knee, *id.* at 4-5 (citing Tr. 53-54). On this record, the ALJ reasonably concluded that Plaintiff's symptom claims were inconsistent with the objective evidence.

This finding is supported by substantial evidence and was a clear and convincing reason, along with the other reason offered, to discount Plaintiff's symptom complaints.

### 2. Conservative Treatment

The ALJ found Plaintiff's conservative treatment was inconsistent with her symptom claims. Tr. 18, 21-22. Evidence of "conservative treatment" is sufficient to discount a claimant's testimony regarding the severity of an impairment. *Parra v. Astrue*, 481 F.3d 742 (9th Cir. 2007) (citing *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995) (treating ailments with an over-the-counter pain medication is evidence of conservative treatment sufficient to discount a claimant's testimony regarding the severity of an impairment)); *see also Tommasetti*, 533 F.3d at 1039 (holding that the ALJ permissibly inferred that the claimant's "pain was not as all-disabling as he reported in light of the fact that he did not seek an aggressive treatment program" and "responded favorably to conservative treatment including physical therapy and the use of anti-inflammatory medication, a transcutaneous electrical nerve stimulation unit, and a lumbosacral corset").

The ALJ found Plaintiff's conservative treatment for her physical conditions was inconsistent with her allegations of disabling limitations. Tr. 21-22. Plaintiff's ankle was treated with warm compress and medication. Tr. 21 (citing Tr. 305). Plaintiff's back and knee pain were generally treated with brief, routine,

and conservative treatment. Tr. 18. Plaintiff's recommended treatment included exercise, massage, warm compress, maintaining good posture, and medication. Tr. 289, 291, 299, 302, 305, 321. There is no evidence Plaintiff was referred for more significant treatment for her conditions during the relevant time period. On this record, the ALJ reasonably concluded that Plaintiff's symptom claims were inconsistent with Plaintiff's conservative treatment. This finding is supported by substantial evidence and was a clear and convincing reason to discount Plaintiff's symptom complaints. Plaintiff is not entitled to remand on these grounds.

**E. Step Five**

Plaintiff contends the ALJ's step five finding was based on an improper RFC formulation and that Plaintiff should have been limited to sedentary work at most. ECF No. 19 at 20-21. Based on this premise, Plaintiff also argues the ALJ should have found Plaintiff disabled under the Medical-Vocational Guidelines at step five of the sequential evaluation. *Id*. However, Plaintiff's argument is based entirely on the assumption that the ALJ erred in considering the medical opinion evidence, the lay witness evidence, and Plaintiff's symptom claims. *Id.* For reasons discussed throughout this decision, the ALJ's consideration of the medical opinion evidence, lay witness evidence, and Plaintiff's symptom claims, was legally sufficient and supported by substantial evidence. Thus, the ALJ did not err in finding Plaintiff capable of performing other work in the national economy

based on the hypothetical containing Plaintiff's RFC.  Plaintiff is not entitled to remand on these grounds.

## CONCLUSION

Having reviewed the record and the ALJ's findings, the Court concludes the ALJ's decision is supported by substantial evidence and free of harmful legal error. Accordingly, **IT IS HEREBY ORDERED**:

1. Plaintiff's Motion for Summary Judgment, **ECF No. 19**, is **DENIED**.

2. Defendant's Motion for Summary Judgment, **ECF No. 23**, is **GRANTED**.

3. The Clerk's Office shall enter **JUDGMENT** in favor of Defendant.

The District Court Executive is directed to file this Order, provide copies to counsel, and **CLOSE THE FILE**.

DATED June 30, 2021.

*s/Mary K. Dimke*
MARY K. DIMKE
UNITED STATES MAGISTRATE JUDGE

ORDER - 30